IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAREN CAHAIL, *individually and as*
*administrator of the estate of GALEN CAHAIL,*
*deceased, et al.*,

        Plaintiffs,

v.                                                                                    Case No.  25-1016-JWB

UNITED STATES OF AMERICA
*et al.*,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on a panoply of pending motions.  If there were ever such thing as an omnibus order, the court submits this is it.  First, before the court are four motions to dismiss.  Defendant Ascension Via Christi ("Ascension") has filed a motion to dismiss.  (Doc. 87.) Defendants Michael R. Dayton, Tony Esparza, Frank Bisignano, the Social Security Administration, and the United States of America have filed a motion to dismiss.  (Doc. 117.) Third, Defendant Leif Leaf has filed a motion to dismiss.  (Doc. 145.)  Finally, Defendant David Braverman has filed a motion to dismiss.  (Doc. 149.)  These motions are fully briefed and ripe for decision.  (Docs. 88, 99, 106, 117, 139, 150, 146, 149, 152, 157, 163[1].)  These motions are GRANTED for the reasons explained herein.

The court also resolves Plaintiffs' motions (1) to perfect service on Ascension via Christi Hospitals; (2) for leave to file a supplemental pleading upon which relief can be based; (3) for an

---

[1] Plaintiff filed the response to Defendant Leif Leaf's motion to dismiss (Doc. 145) out of time and moved for the court's leave to do so.  That motion for leave is granted.  (Doc. 156.)  The court has considered Plaintiff's response in its order.  (Doc. 157.)

1

extension of time to serve Defendants; (4) for leave to amend the complaint to correct the name of Defendant Ascension; (5) for leave to file an additional supplemental pleading; (6) for extension of time to file a response to a Defendant's motion to dismiss; (7) for a hearing regarding the same motion to dismiss; (8) for default judgment; (9) for leave to amend and joinder; (10) for leave to amend; (11) still another motion for leave to amend; and (12) another renewed motion for appointment of counsel.  (Docs. 91, 94, 96, 97, 98, 124, 130, 142, 153, 155, 158, 161.)  These motions are DENIED.

The court finally notes that in December, Plaintiffs also moved for an extension of time to file a response to this court's order overriding objections to an order of the magistrate judge.  (Doc. 74.)  That motion is DENIED as this court's order (Doc. 73), unlike a magistrate judge's report & recommendation, is final.  Plaintiffs have no entitlement to a "response."

## I.    Facts

The following facts are taken from Plaintiffs' third amended complaint.  (Doc. 57.)  The court assumes their truth for the purposes of this order.  Plaintiff Karen Cahail is the administrator of the estate of her son Galen Cahail.  (*Id.* at 2.)  She, along with Rachael Cahail, are suing the United States of America; the Social Security Administration ("SSA"); Frank Bisignano, the Commissioner of the SSA; Michael R. Dayton, an administrative law judge of the SSA; Tony Esparza, a disability determination examiner for the SSA; David Braverman, a medical consultant for the SSA; Leif Leaf, a psychologist consultant for the SSA; and Ascension Via Christi St. Francis Hospital.

On January 28, 2023, Ms. Cahail's son Galen died at the age of 34.[2]  (*Id.* at 5.)  At the time of his death, he had numerous medical conditions to include type 1 diabetes, attention deficit

---

[2] The court notes that while this date appears on page 5 of Plaintiffs' third amended complaint, page 7 of the complaint says Mr. Cahail died on January 15, 2023.  *Compare* (Doc. 57 at 5.) *with* (Doc. 57 at 7.)

hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and "[m]ajor [d]epression." (*Id.*)  Before his death, Galen Cahail applied to the SSA multiple times seeking disability benefits. (*Id.*)  Defendant Dayton denied Mr. Cahail disability benefits in 2019. (*Id.* at 6.)  Plaintiffs allege that in doing so, Defendant Dayton made a host of legal errors and "fabricated gainful employment" for Mr. Cahail. (*Id.* at 5-6.)

After the 2019 decision, Mr. Cahail allegedly developed additional medical conditions. (*Id.* at 6.)  Still, a new disability benefits application was denied on January 12, 2023. (*Id.*)  Plaintiffs complain that the various consultants and specialists that the SSA relied upon in that denial found that her son could work despite his medical conditions. (*Id.*)  Plaintiffs also allege that the SSA failed to follow up on a consultative examination despite a doctor's statement that such follow-up may be warranted. (*Id.*)  The SSA also apparently failed to comply with various portions of its governing statutes and regulations when it made its decision. (*Id.* at 7.)  In doing so, Plaintiffs allege that the SSA required Galen Cahail to fill out a form that "coerce[d]" consent to disclose private medical information. (*Id.*)

As to Defendant Ascension Via Christi St. Francis ("hereinafter Ascension"), it allegedly failed to update and maintained inconsistent medical records pertaining to Galen Cahail. (*Id.*)  Plaintiffs allege that Ascension furnished inaccurate medical records to the SSA. (*Id.*)  Ascension also apparently never made a referral to its home health division and fraudulently claimed it did make such a referral. (*Id.*)

Plaintiffs claim that Galen's death was precipitated by the SSA's wrongful denial of benefits which led to his "inability to access necessary medical care, medication, and basic necessities, which caused his health to deteriorate and ultimately led to his death." (*Id.* at 8.)  Plaintiff Karen Cahail sought, eight days after her son's death, to apply for survivor's benefits

from the SSA.  (*Id.*)  This application was denied.  (*Id.*)  Defendant SSA denied her subsequent motion for reconsideration.  (*Id.*)  Plaintiffs claim to have exhausted all administrative remedies under the Federal Tort Claims Act ("FTCA") and the Social Security Act.  (*Id.*)

They bring several claims in this lawsuit.  First, Plaintiffs assert a claim of wrongful death under the FTCA against Defendant USA.  (*Id.* at 8-9.)  Count II claims a violation of Galen Cahail's due process rights under the Fifth Amendment and is levied against the consultants and specialists who worked with the SSA when they denied his benefits.  (*Id.* at 9-10.)  Count III is levied against those same Defendants and asserts a violation of Galen Cahail's rights under the Equal Protection Clause of the Fourteenth Amendment.  (*Id.* at 10.)  Count IV alleges a violation by the same Defendants of Galen Cahail's Fourth Amendment rights.  (*Id.* at 11.)  Count V states only a "violation of civil rights" against the same group of specialists and consultants.  (*Id.* 11-12.)  Count VI alleges negligence by the group of specialists and consultants and the United States of America.  (*Id.* at 12-13.)  Count VII alleges medical malpractice against Defendants Braverman and Leaf.  (*Id.* at 13.)  Count VIII alleges medical malpractice and negligence against Ascension.  (*Id.* at 14.)  Count IX alleges that the USA, the SSA, and Commissioner Bisignano violated the Administrative Procedure Act ("APA").  (*Id.* at 15.)  Finally, count X alleges that the USA, SSA, and Commissioner Bisignano violated the Privacy Act.  (*Id.* at 15-16.)

Plaintiffs seek compensatory and punitive damages, declaratory relief that Galen Cahail's rights were violated, an order setting aside the SSA's benefits determination, an order requiring policy changes at the SSA, an order requiring Ascension to apologize to Karen Cahail, an order "placing the responsible individuals on the GSA exclusion list to prevent them from causing similar harm to others", and an order "requiring disability income that should have been received from August 2019[.]"  (*Id.* at 16-17.)

All Defendants in this action have moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Docs. 87, 117, 145, 149.)  The court addresses their motions below.[3]  While the court understands Plaintiffs' grief relating to the facts in this case and sympathizes with it, the court grants Defendants' motions to dismiss.

## II.    Standard

### A.    Rule 12(b)(1)

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012).  When the court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6).  *Bell v. Hood*, 327 U.S. 678, 682 (1946).  Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.    Rule 12(b)(6)

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiffs.  *Archuleta v. Wagner*, 523 F.3d

---

[3] Plaintiffs' motion for hearing (Doc. 130) is DENIED.  The court has discretion whether to grant a hearing and does not find one necessary here.  *See* D. Kan. R. 7.2.

1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  Given Plaintiffs' pro se status, the court construes the pleadings liberally, but it cannot act as their advocates or construct arguments on their behalf.  *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

### III.    Analysis

**A. Claims Pertaining to the United States of America, the Social Security Administration, Frank Bisignano, Michael Dayton, Tony Esparza, Leif Leaf, and David Braverman**

Against some or all of the above Defendants, Plaintiffs bring claims of wrongful death under the FTCA (count I), due process violations under the Fifth Amendment (count II), equal protection violations under the Fourteenth Amendment (count III)[4], violations of the Fourth Amendment (count IV), civil rights violations (count V), negligence (count VI), medical malpractice (count VII),  violations of the APA (count IX), and violations of the Privacy Act (count X).  These Defendants (except Defendants Leaf and Braverman)[5] have jointly moved to dismiss the claims listed above under Rule 12(b)(1) and (b)(6).  (Doc. 117.)  In the alternative, they ask the court to convert the motion to dismiss into one for summary judgment.  (Doc. 117 at 1.)  The court declines to convert the motion as it can rule on the motion to dismiss without turning to evidence outside of the complaint.

Plaintiffs strongly oppose the motion to dismiss in a 45-page memorandum in opposition, but do not respond with specificity to the bulk of Defendants' arguments for dismissal.  (Doc. 139.)

---

[4] This count is dismissed because Plaintiff's claims do not include any allegations by a state actor, which precludes application of the Fourteenth Amendment, as the Amendment only applies to state actors.  *Mohamed v. Tatum*, 380 F. Supp. 2d 1214, 1224 (D. Kan. 2005) (citing *Dist. of Columbia v. Carter*, 409 U.S. 418, 423 (1973)).  For the same reason, to the extent Defendant asserts claims under 42 U.S.C. § 1983, as Defendant Braverman raises (Doc. 149 at 8), these claims are also dismissed.

[5] Defendants Leaf and Braverman have filed their own motions to dismiss on largely the same grounds.  (Docs. 145, 149.)

6

Moreover, Plaintiffs' arguments include substantial references to individuals and claims not in their Third Amended Complaint.

Defendants' chief argument is that the court lacks subject matter jurisdiction because Plaintiffs' claims, for various reasons, are so "insubstantial, implausible, foreclosed by prior decision of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *See* (Doc. 117 at 13) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)).  Defendants argue this because they believe that Plaintiffs lack a cause of action or their claims are barred by sovereign immunity.  (*Id.* at 15-24.)  The court addresses each claim below.

### 1. Bivens Claims

Plaintiffs raise four constitutional tort claims for which they seek monetary damages.  The court notes at the outset that it is not clear under what theory Plaintiffs bring their claims.  This is partially because they do not clarify whether they sue the individual Defendants in their official or individual capacity.  Because they seek monetary damages against individuals, however, the court construes the constitutional tort claims as *Bivens* claims against the Defendants in their individual capacity.[6]  Defendants maintain that these claims are foreclosed by precedent.  They note that Plaintiffs' claims are principally for damages resulting from the alleged "denial or reduction of

---

[6] To the extent that the constitutional tort claims are really asserted against the United States by suing the officials in their official capacity under the Federal Tort Claims Act, the claims are still barred.  *See F.D.I.C. v. Meyer*, 510 US 471, 477-78 (1994) ("Applying these principles to this case, we conclude that Meyer's constitutional tort claim is not 'cognizable' under § 1346(b) because it is not actionable under § 1346(b)—that is, § 1346(b) does not provide a cause of action for such a claim. As noted above, to be actionable under § 1346(b), a claim must allege, *inter alia,* that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.' A constitutional tort claim such as Meyer's could not contain such an allegation. Indeed, we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA. By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right. To use the terminology of *Richards,* the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.") (internal citations omitted).

Social Security payments." (*Id.* at 14.) These kinds of claims, they explain, are barred by Supreme Court and Tenth Circuit precedent. With this, the court agrees. *See Smith v. Comm'r, SSA*, No. 22-6115, 2023 WL 2945858, at *2 (10th Cir. Apr. 14, 2023) ("The district court was also correct that the Social Security Act provides the exclusive remedy for the denial of social security benefits.") (citing *Mathews v. Eldridge*, 424 US 319, 327 (1976)).

Moreover, the Supreme Court has expressly refused to allow *Bivens* claims for money damages against federal officials who engaged in alleged constitutional violations during the denial of Social Security benefits. *Schweiker v. Chilicky*, 487 US 412, 424-25 (1988) (holding that the Social Security Act "makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits[]" and therefore declining to "creat[e] a *Bivens* remedy."). Moreover, any expansion of *Bivens* in general is appropriately met with heavy skepticism, as courts have moved away from crafting judicial remedies when Congress has declined to provide such remedies under law. *Cf. Ziglar v. Abbasi*, 582 U.S. 120, 135-36 (2017). "Sometimes there will be doubt [about expanding *Bivens*] because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id.* at 137. Given that the "administrative structure and procedures of the Social Security system, which affects virtually every American, 'are of a size and extent difficult to comprehend'", this case is the ultimate place to be skeptical of a *Bivens* tack-on to a Congressional statutory scheme. *See Chilicky*, 487 U.S. at 424 (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). This "single 'reason to pause'" is enough to instruct the court that it "may not recognize a *Bivens* remedy." *Egbert v. Boule*, 596 U.S. 482, 491-93 (2022) (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

8

Plaintiffs claim that this is not a new *Bivens* context but instead fits within *Carlson v. Green*, 446 U.S. 14 (1980), which permitted *Bivens* suits under the Eighth Amendment in certain circumstances. (Doc. 139 at 29.) This is wrong. Plaintiffs have not even alleged claims under the Eighth Amendment. (Doc. 57 at 8-16.) Furthermore, given the Supreme Court's reluctance to expand *Bivens* as explained above, the court will not attempt to shoehorn Plaintiffs' markedly distinguishable claims into the narrow window cracked open by *Carlson v. Green*. *See Egbert*, 596 U.S. at 486 ("Because our cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts, we reverse.").

For the foregoing reasons, Plaintiffs' constitutional tort claims (counts II, III, IV, V) must be dismissed for lack of subject matter jurisdiction. It is a bedrock principle of American law that absent a Congressional scheme providing a cause of action or circumstances implicating one of the narrow paths through *Bivens*, individuals cannot maintain actions for money damages against federal officials. *See Abbasi*, 582 U.S. at 130 ("In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983. It entitles an injured person to money damages if a *state* official violates his or her constitutional rights. Congress did not create an analogous statute for *federal* officials.") (emphasis added). Plaintiffs' count II, count III, count IV, and count V are therefore dismissed.

### 2. Federal Tort Claims Act

Two of Plaintiffs' remaining claims asserted against these Defendants are brought under the FTCA for wrongful death (count I) and negligence (count VI). First, only the United States of America is a proper defendant for purposes of an FTCA suit. *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009). As Defendants explain, this means that count VI must be dismissed as to Frank Bisignano, Michael R. Dayton, Tony Esparza, David Braverman, and Leif Leaf. *See*

(Doc. 57 at 12.)  Only the United States of America can remain as a defendant under count VI. Count I is brought only against the United States of America.  (*Id.* at 8.)

Even once the United States is the only remaining party, the wrongful death and negligence claims brought against it fail for other reasons.  Both claims fail because, as pled, there is no "private analogue" to Plaintiffs' claims, which takes them outside of the FTCA's limited sovereign immunity waiver.  *United States v. Olson*, 546 U.S. 43, 45-46 (2005) ("The Act says that it waives sovereign immunity 'under circumstances where the United States, if a *private person,*' not 'the United States, if a state or municipal entity,' would be liable.") (quoting 28 U.S.C. § 1346(b)(1)) (emphasis in original)).

Here, Plaintiffs' claims cannot proceed because "[t]he underlying principle is that the FTCA's waiver of sovereign immunity is limited to conduct for which a private person could be held liable under state tort law, *see* 28 U.S.C. §§ 1346(b), 2674, and federal statutory duties regarding peculiarly administrative acts generally involve 'a type of conduct that private persons could not engage in, and hence could not be liable for under local law.'"  *United States v. Agronics*, 164 F.3d 1343, 1346 (10th Cir. 1999) (quoting *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997)).  Other courts have held "a private person cannot process a claim for Social Security disability benefits or refer a case for a fraud investigation by the OIG."  *Poncho-Alderete v. United States Gov't*, No. 22-CV-153, 2024 WL 2132394, at *12 (D.N.M. May 8, 2024). In this case, as in *Poncho-Alderete*, "Plaintiff has not plausibly alleged that a private person's failure to comply with an SSA custom, policy, or practice in doing so would render him or her liable to the applicant under [Kansas] law."  *Id.*

Under Kansas law, negligence and wrongful death require the same elements.  *Wellhausen v. Univ. of Kansas*, 189 P.3d 1181, 1183 (Kan. Ct. App. 2008) ("To establish a claim for wrongful

death based on negligence, the Wellhausens must prove the existence of a duty, a breach of that duty, injury, and a causal connection between the breach of the duty and the injury suffered."). Plaintiffs have directed the court to no case where a private person could be held liable under a theory of negligence for something analogous to failing to properly process Social Security benefits.  Nor are such circumstances obvious to the court.  Plaintiffs only point to a Kansas state statute that prohibits "mistreatment of a dependent adult."  (Doc. 139 at 28) (citing K.S.A. § 21-5417).  But simply citing a tenuously analogous statute is not what is required of Plaintiffs.  They have not demonstrated circumstances actionable under torts of negligence or wrongful death that are analogous to the alleged wrongful denial of Social Security benefits.  For this reason, Plaintiff's FTCA claims are outside the scope of the statute, the United States has not waved its sovereign immunity, and this court lacks subject matter jurisdiction.

Plaintiffs resist the court's analysis by citing to 28 U.S.C. 2679(b)(2)(A), a portion of the FTCA, which they claim permits suits against federal employees for violations of the Constitution. (Doc. 139 at 28.)  The relevant part of the statute in context reads:

> (b)(1) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.
>
> (2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—
>
>> (A) which is brought for a violation of the Constitution of the United States, or
>>
>> (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

11

28 U.S.C. § 2679(b). This statute is inapposite. True, the FTCA waives the federal government's sovereign immunity in limited circumstances. *See, e.g.*, 28 U.S.C. § 1346(b). However, the provision Plaintiffs cite does not create a cause of action or waive sovereign immunity. Rather, the import of the statute is exclusivity; FTCA suits against the United States are the sole available avenue for money damages for injuries inflicted by federal officials acting within the scope of their office. 28 U.S.C. § 2679(b)(1). The statute then goes on to except from its scope actions for constitutional violations and any other statute that authorizes an action for money damages against federal officials. 28 U.S.C. § 2679(b)(2)(A)-(B). These exceptions, however, do not create any rights or remedies in and of themselves, instead only leaving open the door to *Bivens* remedies or other statutory schemes. *See Pearsons v. United States*, 723 F. Supp. 3d 825, 832 (C.D. Cal. 2024) (citing *United States v. Smith*, 499 U.S. 160, 167 (1991)).

Plaintiffs also cite a portion of the Rehabilitation Act that imposes anti-discrimination requirements on federal agencies. (Doc. 139 at 28) (citing 29 U.S.C. § 794(a)). They claim this is a waiver of sovereign immunity. (*Id.*) It is not. This provision does not expressly waive sovereign immunity, something that courts are loathe to imply absent a clear command from Congress. *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.") (internal citations omitted).

Plaintiffs' claims for negligence (count VI) and wrongful death (count I) are dismissed.

### 3. *Administrative Procedure Act Claim*

Plaintiffs also raise claims for violations of the APA against the United States of America, the SSA, and Frank Bisignano. (Doc. 57 at 15.) Naming all of these entities is largely duplicative in the APA context, so the court considers them together. *See* 5 U.S.C. §§ 701-702. Moreover, to

the extent that Plaintiffs seek monetary damages, these are unavailable under the APA. *Id.* at §

702.

Under their APA claim, Plaintiffs assert that the SSA failed to follow Social Security regulations which resulted in a denial of benefits to Galen Cahail and led to his death. (Doc. 57 at 15.)  But, as Defendants point out, judicial review of Social Security determinations are made outside of the APA, instead being brought exclusively under the Social Security Act itself.  42 U.S.C. § 405(g).  Courts have routinely refused to sustain APA claims that are premised upon a denial of Social Security benefits.  *See Randall v. Comm'r Internal Revenue Serv.*, No. 24-CV-03485-KAW, 2024 WL 5378334, at *5 (N.D. Cal. Dec. 2, 2024) ("A plaintiff may not bring a claim under the APA challenging the improper withholding of benefits, as any such claims must be brought under the Social Security Act."); *Villarino v. Comm'r, Social Sec. Admin.*, No. 12-CV-425, 2012 WL 1355692, at *4 (E.D. Cal. Apr. 18, 2012) (citing *Bowen v. Mass*, 487 U.S. 879, 902-04 (1988)) ("Because the Social Security Act provides for review of a challenge to disability benefits, a separate challenge under the APA is not permissible."); *see also Fomby v. Univ. of Florida & Social Sec. Admin.*, No. 25-CV-265-AW-ZCB, 2025 WL 3635025, at *2 (N.D. Fla. Oct. 17, 2025), *report and recommendation adopted sub nom. Fomby v. Social Sec. Admin.*, No. 25-CV-265-AW, 2025 WL 3634346 (N.D. Fla. Dec. 15, 2025) ("§ 405(g) is the sole avenue for seeking judicial review under the Social Security Act. And claims seeking Social Security benefits, including claims based on allegations of improper handling of benefit requests, must be brought under § 405(g). Relief is limited to the Social Security benefits for which the plaintiff is eligible."). This court will also decline to entertain such a claim.  Plaintiffs' claims under the APA (count IX) are dismissed for lack of subject matter jurisdiction.

    *4.  Privacy Act Claim*

Finally, Plaintiffs maintain a claim against the United States, the SSA, and Frank Bisignano for a violation of the Privacy Act at 5 U.S.C. § 552a. (Doc. 57 at 15-16.) They allege that Defendants required Mr. Cahail to complete an SSA form that required him to consent to the disclosure of private medical information "without meaningful opt-out provisions, and used this information in a way that compromised his rights and confidentiality." (*Id.* at 16.) According to Plaintiffs, this violated the Privacy Act and caused Galen Cahail to become injured "by violating his privacy rights and using his private medical information against him in the disability determination process." (*Id.*)

As Defendants point out, it is beyond obvious that applications for Social Security benefits require the disclosure of information to the Social Security Administration. (Doc. 117 at 17-18.) Defendants claim that this bars Plaintiffs' Privacy Act claims. (*Id.* at 18.) The court agrees. Plaintiffs do not identify in their third amended complaint or their response to Defendants' motion to dismiss precisely which part of the Privacy Act that Defendants violated. Based on the tenor of Plaintiffs' allegations, the court assumes that Plaintiffs bring claims under § 552a(b)(1) or § 552a(e)(1) which require that agencies only maintain and disclose records about an individual to the extent necessary to operate. *See* 5 U.S.C. §§ 552a(b)(1), (e)(1). Plaintiffs do not allege that form SSA-827 required Galen Cahail to disclose more information than was necessary for the SSA to make its benefits determinations. *See generally* (Doc. 57 at 7, 15-16.) Accordingly, the use of this form by the agency cannot make out a Privacy Act violation. As a result, the court dismisses count X for failure to state a claim under Fed R. Civ. P. 12(b)(6).

## B.      Claims Pertaining to Ascension

Finally, Defendant Ascension has moved to dismiss. (Doc. 87.) Ascension argues that this court lacks subject matter and personal jurisdiction, that the complaint is barred by the statute of

limitations, and that the complaint fails to state a claim for which relief can be granted.  (Doc. 88 at 3, 5, 7, 9.)  Ascension also argues that Plaintiffs have failed to meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure with respect to the allegations of fraud.  (*Id.* at 10.)  Plaintiffs respond arguing that the court does have jurisdiction and asks to supplement the pleadings to prevent the case from being dismissed.  (Doc. 99 at 1, 3.)  Plaintiffs also dispute the notion that they have failed to state a claim.  (*Id.* at 3.)  The court agrees with Defendant.

The court declines to exercise supplemental jurisdiction over Plaintiffs' claims against Defendant Ascension and thus will not proceed with further analysis.  Plaintiffs assert that the court can exercise its supplemental jurisdiction over what are quintessential state law claims of medical malpractice and negligence.  (*Id.* at 1) (citing 28 U.S.C. § 1367).  But the supplemental jurisdiction statute should only be invoked when otherwise proper federal claims remain or despite the lack of such claims, "judicial economy, convenience, or fairness" would be served by retaining jurisdiction.  *Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1141 (10th Cir. 2024) (quoting *Foxfield Villa Assocs., L.L.C. v. Robben*, 967 F.3d 1082, 1102-03 (10th Cir. 2020) (internal quotation marks omitted)).  No federal claims remain and the court has determined that circumstances warranting retention of jurisdiction are not present here.  This case has been litigated entirely at the complaint/motion to dismiss stage, and the parties have not made a showing that they have "already expended a great deal of time and energy on the state law claims."  *Id.* Indeed, the Supreme Court's general rule is that when federal claims are no longer before the federal tribunal, the state claims should return to a state tribunal.  *United Mine Workers of Am. v. Gibbs* 383 U.S. 715, 726 (1966); *see also United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) ("[A] district court should normally dismiss supplemental state law claims after all

federal claims have been dismissed, particularly when the federal claims are dismissed *before trial*.") (emphasis added).  The court discerns no such circumstances that would require it to deviate from that general rule.[7]  Plaintiffs' count VII is dismissed.[8]

## IV.    Conclusion

For the foregoing reasons the court GRANTS Defendant Ascension's motion to dismiss (Doc. 87), Defendant United States of America, Social Security Administration, Frank Bisignano, Michael R. Dayton, and Tony Esparza's motion to dismiss (Doc. 117), Defendant Leif Leaf's motion to dismiss (Doc. 145), and Defendant David Braverman's motion to dismiss.  (Doc. 149.) Plaintiffs' motion for hearing is DENIED.  (Doc. 130.)  Plaintiffs' request for default judgment is DENIED.  (Doc. 142.)

Plaintiffs' remaining motions to amend are denied as the operative complaint is already the third amended complaint and Plaintiffs have filed repeated motions to amend throughout the duration of this case.  This is improper.  *Shed v. Oklahoma Dep't of Human Serv.*, 729 F. App'x 653, 658 (10th Cir. 2018) ("[T]he purpose of motion practice under Rule 12(b)(6) ... is not for the court to identify pleading deficiencies as to each defendant, with such deficiencies to be corrected by serial amendments.") (internal quotation marks and citation omitted) (omission in original). Plaintiffs' motions to amend are DENIED.  (Docs. 153, 155, 158.)

---

[7] For this same reason, Plaintiffs' state law claim for medical malpractice (count VII) against Defendants Leaf and Braverman is dismissed.  (Doc. 146 at 10; Doc. 149 at 4.)  To the extent that Plaintiffs assert state law negligence claims under count VI (which is otherwise construed as an FTCA claim against the United States) against Defendants Leaf and Braverman, those claims are also dismissed for the same reason.  Because Defendant Leaf has entered a motion to dismiss, and the court grants that motion, Plaintiffs' request for default judgment against Defendant Leaf is DENIED.  (Doc. 142.)

[8] Due to this holding, Plaintiffs' Motion to Perfect Service on Ascension via Christi Hospitals (Doc. 91), is DENIED as moot.  Additionally, Plaintiffs' motions to supplement the pleadings with regard to claims against Ascension are DENIED as moot as the amendments contain only state law issues.  (Docs. 93, 94, 98.)  Plaintiffs also move for an extension of time to properly serve Defendant Ascension (Doc. 96); this is DENIED as moot because the claims have been dismissed on other grounds.  Finally, Plaintiffs' motion to amend the complaint to correct the name of Ascension on the complaint (Doc. 97), is DENIED as moot because the claims against that Defendant have been dismissed.

Further, Plaintiffs' renewed motion for appointment of counsel is denied.  First, Plaintiffs' case has now been dismissed.  But second, as the undersigned and the magistrate judge have repeatedly indicated, Plaintiffs are not entitled to counsel in a civil case such as this.  (Docs. 21; 42 at 7-10; 50 at 2-4; 70; 73 at 3-4; 83 at 3-5.)  Plaintiffs' latest motion, despite referencing new health problems and significant responsibilities that the court sympathizes with, does not change this.  The grounds on which Plaintiffs rest their motion are similar to earlier requests.  The court's analysis is therefore unchanged.  Plaintiffs' motion is therefore DENIED.  (Doc. 161.)

These results compel Plaintiffs' various remaining pending motions be DENIED as moot. (Docs. 74, 91, 93, 94, 96, 97, 98, 124.)

IT IS SO ORDERED.  Dated this 1st day of May, 2026.


s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE